UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED COAL COMPANY, LLC,

Plaintiff,

– *against* –

XCOAL ENERGY AND RESOURCES,

Defendant.

**OPINION & ORDER**

23 Civ. 5709 (ER)

RAMOS, D.J.:

United Coal Company, LLC, brings this action against Xcoal Energy and Resources for breach of contract, alleging Xcoal failed to accept delivery of coal under two purchase orders.  Before the Court is Xcoal's motion to amend its answer by adding affirmative defenses and counterclaims for declaratory judgment, breach of contract, and tortious interference.  Doc. 43.  For the reasons set forth below, Xcoal's motion is GRANTED in part and DENIED in part.

### A.  Factual Background[1]

#### 1.  *The Parties*

United's sole member is Metinvest US, Inc., a corporation organized under the laws of Delaware with its principal place of business in Tennessee.  Doc. 1 ¶ 13.[2]  United is engaged in the business of producing and selling coal in the United States.  ¶ 15.  Xcoal is a limited partnership organized under the laws of Pennsylvania with its principal place of business in Pennsylvania.  ¶ 16.  Xcoal delivers coal to customers around the world.  ¶ 19.

---

[1] The following facts are primarily taken from the complaint, Doc. 1, the proposed amended answer, Doc. 46-1, and the attached documents.

[2] Unless otherwise noted, citations to "¶ __" refer to the complaint, Doc. 1.

### 2. The Business Relationship

In February 2022, Xcoal entered into contracts for the sale of coal with one of its "established" customers, Acciaierie d'Italia S.p.A. ("ADI"). Doc. 46-1 at 17. Xcoal sourced the coal it sold to ADI from United under a separate contract. *Id.* at 18. During the transaction, United allegedly loaded the coal onto a vessel for shipment to ADI to satisfy Xcoal's order. *Id.* Xcoal then received payment from ADI. *Id.* Through this transaction, United allegedly learned of ADI's coal needs and subsequently informed Xcoal that "Metinvest had expressed displeasure regarding Xcoal's supply of coal sourced from United [] to ADI, because United [] could supply this coal directly to ADI without the involvement of Xcoal." *Id.*

In March 2022, Xcoal entered into discussions with United regarding a potential sale of coal. ¶ 23. They initially agreed that United would sell Xcoal a total of 200,000 metric tons of Wellmore HVA coal in April, May, and June 2022, and 20,000 metric tons of Affinity LV coal in June 2022. ¶¶ 28–29, 46–47. Both parties also agreed to include a modification provision related to the delivery schedule and a provision requiring that Xcoal provide notice of breach and an opportunity to cure within thirty days if United failed to perform. ¶¶ 30, 47; *see* Doc. 46-7 at 4, 6; Doc. 46-8 at 4, 6.[3]

On June 13, 2022, the parties finally agreed to and signed a purchase order for the sale of 200,000 metric tons of Wellmore HVA coal (the "Wellmore Purchase Order"). Doc. 46-1 at 19–20. On July 8, 2022, the parties also agreed to a second purchase order for the sale of 20,000 metric tons of Affinity LV coal (the "Affinity Purchase Order"), but only Xcoal signed the second purchase order. *Id.* at 20–21.

From here, the parties present two different versions of the facts. In its proposed amended answer, Xcoal explains that United initially refused to sign the Wellmore and Affinity Purchase Orders (collectively, the "Purchase Orders") in April 2022,

---

[3] The Court considers the purchase orders because they were attached as exhibits to United's initial complaint. Docs. 1-1, 1-2; *see DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

Case 1:23-cv-05709-ER    Document 63    Filed 10/21/24    Page 3 of 16

necessitating two additional months of negotiations.  *Id.* at 19.  By the time the Purchase

Orders were finalized, the parties mistakenly failed to update the delivery schedule.  *Id.* at

26.  According to United, it had "repeatedly" requested that Xcoal obtain permits for

trains to deliver the coal between April and August 2022, but Xcoal failed to do so or

provide a reason for its failure to perform.  ¶¶ 48, 56–57, 63.  In addition, United

maintains that its representatives had "repeatedly" requested that Xcoal submit an

alternative delivery schedule for both Purchase Orders between April and July 2022, but

Xcoal did not respond.  Doc. 49 at 3–5.

On June 13, 14, and 26, 2022, United delivered approximately 54,000 metric tons

out of the 200,000 metric tons of coal agreed upon under the Wellmore Purchase Order.

¶ 49.  United alleges that Xcoal failed to obtain permits for the remaining coal and

therefore United did not deliver and Xcoal did not accept any of the remaining coal under

the Wellmore Purchase Order or *any* coal under the Affinity Purchase Order.  ¶¶ 56–58.

Xcoal alleges that the reason it did not accept any additional coal from United was

because it had initially planned for the coal it received under the Purchase Orders to be

purchased by ADI; however, ADI would not accept any coal during this time.  Doc. 46-1

at 20, 22.  Xcoal alleges that it "learned the reason for ADI's delayed performance" was

that "United [] entered into discussions with ADI to provide the coal that ADI was

already contractually required to purchase from Xcoal."  *Id.* at 22.  By September 2022,

ADI no longer required the coal that it had committed to purchase from Xcoal because it

had already agreed to purchase coal from United.  *Id.* at 23.

On August 11, 2022, United provided Xcoal notice of its breach for failure to

accept coal under the Purchase Orders.  ¶ 65.  In response, Xcoal alleges, it entered into

good faith negotiations to modify the delivery schedule, but United refused to agree to

the delivery schedule it proposed.  Doc. 46-1 at 22, 24.  According to United, Xcoal had

"initially expressed interest in . . . a good-faith discussion," but despite these

conversations, the parties were unable to reach an agreement.  ¶¶ 70–71.

On October 20, 2022, Xcoal requested delivery of coal under both Purchase Orders. Doc. 46-1 at 24. On October 25, United denied the request via text message, stating that it was no longer willing to accept orders from Xcoal. *Id.* On November 1, Xcoal sought confirmation that United would continue to refuse to deliver under the Purchase Orders. *Id.* On November 20, United replied, stating that it would not deliver any coal under the Purchase Orders, that Xcoal had no "contractual rights to purchase any coal from United," and that it remained open to resolving the legal dispute if Xcoal offered a proposal to resolve its breach and default. *Id.* On November 23, Xcoal again requested delivery of coal pursuant to both Purchase Orders, and on December 4, United denied the request and asked that all future communication be submitted through legal counsel. *Id.*

### B. Procedural History

United commenced this action on July 3, 2023, for breach of contract. Doc. 1. On August 22, 2023, Xcoal answered the complaint, asserting nine affirmative defenses: (1) failure to state a claim, (2) the doctrines of accord and satisfaction, estoppel, failure of consideration, laches, payment, release, unclean hands, and waiver, (3) *force majeure* and limited liability provisions, (4) failure to execute written contracts, (5) impossibility or impracticability of performance, (6) failure of conditions prerequisite to Xcoal's performance, (7) failure to take reasonable action to mitigate damages, (8) failure to timely tender coal for delivery, and (9) interference with Xcoal's contracts with a third-party customer. Doc. 7 at 13–14. On September 22, 2023, the Court entered a scheduling order providing that amended pleadings could be filed until December 1, 2023. Doc. 19. On October 13, 2023, Xcoal served its first set of document requests on United. Doc. 44 at 2. United provided written responses to these requests on November 13, 2023, but, according to Xcoal, did not provide any responsive documents until January 8, 2024. *Id.* at 2–3. On January 12, 2024, United deposed Ernie Thrasher, Xcoal's chief executive officer. *Id.* at 4. Xcoal claims that it was only after it received

4

the responsive documents, and after the amended pleadings deadline had passed, that it learned that United had interfered with Xcoal's contract with ADI and that United "is likely responsible for the conduct of which it complains." *Id.* at 1–2.

On May 2, 2024, United filed a letter asking the Court to allow it to include excerpts from Ernie Thrasher's deposition transcript as part of the record because it demonstrates that Xcoal unduly delayed in moving to amend, and Xcoal has not identified a legitimate privacy concern that would outweigh the presumption of access. Doc. 37.  On May 23, 2024, Xcoal moved for leave to amend its answer.  Doc. 43.  In the proposed amended answer, Xcoal asserts three additional affirmative defenses:  (1) mutual mistake, (2) improper termination of the Purchase Orders, and (3) no reasonably certain remedy available.  Doc. 46-1 at 13–14.  Xcoal also seeks to add six counterclaims against United:  (1) declaratory judgment that the Wellmore Purchase Order is void and unenforceable, (2) declaratory judgment that the Affinity Purchase Order is void and unenforceable, (3) declaratory judgment that United's material breach terminated the Purchase Orders, (4) breach of contract under the Wellmore Purchase Order, (5) breach of contract under the Affinity Purchase Order, and (6) tortious interference with existing and prospective contracts.  *Id.* at 25–36.

On June 6, 2024, United filed its opposition to the proposed amended answer, Doc. 49, and a second letter requesting that it be allowed to incorporate excerpts of Thrasher's deposition transcript in its response to Xcoal's motion to amend, Doc. 48.  On June 12, Xcoal submitted a letter requesting that the deposition remain under seal.  Doc. 53.  On June 17, United replied that the deposition should be considered in determining whether Xcoal's counterclaims are unduly delayed because it demonstrates that Xcoal and its CEO knew of the information related to its counterclaims throughout 2022.  Doc. 55.

## II.    LEGAL STANDARD

"Rules 15 and 16 of the Federal Rules of Civil Procedure set forth the standards under which a party may amend a pleading." *Summerwind West Condominium Owners Ass'n, Inc. v. Mt. Hawley Ins. Co.*, No. 22 Civ. 3165 (JPC), 2023 WL 8307561, at *3 (S.D.N.Y. Dec. 1, 2023).  At the outset of litigation, "[a] party may amend its pleading once as a matter of course" within certain prescribed time limits.  Fed. R. Civ. P. 15(a)(1).  Outside those limits, a party may amend only with the written consent of the opposing party or with leave of the court.  Fed. R. Civ. P. 15(a)(2).  At that stage, the Second Circuit has explained, Rule 15 operates under a "permissive standard" that is "consistent with our 'strong preference for resolving disputes on the merits.'"  *Williams v. Citigroup Inc.*, 659 F.3d 208, 212–13 (2d Cir. 2011) (citation omitted).  Once "the district court issues a scheduling order setting a date after which no amendment will be permitted," the permissive standard is replaced by the stricter "good cause" standard of Rule 16(b)(4).  *Sacerdote v. New York University*, 9 F.4th 95, 115 (2d Cir. 2021).

The parties dispute whether Xcoal's motion to amend its answer is subject to Rule 16's good cause standard given that the scheduling order set a deadline by which "[a]mended pleadings may be filed."  Doc. 19 ¶ 4.  Xcoal relies on the decision in *Sacerdote*, which made clear that "[d]istrict courts wishing to evaluate motions for leave to amend under Rule 16 after a particular date need only write their scheduling orders consistent with that intent, and state that no amendment will be permitted after that date in order to trigger the Rule 16 standard."  9 F.4th at 116; *see* Doc. 44 at 5.  Here, Xcoal suggests that because the scheduling order does not use language that explicitly prohibits amendments after a specific date, its motion to amend should be analyzed under Rule 15.  Doc. 44 at 5.  United, on the other hand, argues that Rule 16's good cause standard should apply, contending that the scheduling order does not differentiate between deadlines for amendments with leave of the court and amendments without such leave

and therefore sets a deadline for all amended pleadings.  Doc. 49 at 8.  United also maintains that Xcoal's motion would fail even under the Rule 15 standard.  *Id.*

The Court elects to apply Rule 15 given that "the 'good cause' standard is permitted but not mandated when a party seeks to amend its pleadings after the deadline set in the scheduling order."  *EMR (USA Holdings) Inc. v. Goldberg,* No. 18 Civ. 7849 (ER), 2020 WL 4038358, at *3 (S.D.N.Y. July 17, 2020) (citation omitted).  Additionally, the Court finds that even if it were to apply the Rule 16 good cause standard, which focuses on the diligence of the moving party, it would come to the same conclusion.  *See id.*

## III.    DISCUSSION

### A.  Leave to Amend

Rule 15 provides that courts "should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  But leave to amend may be denied "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Eastman Kodak Co. v. Henry Bath LLC*, 936 F.3d 86, 98 (2d Cir. 2019) (citation omitted).

Xcoal argues that because United failed to address any of the affirmative defenses in its opposition, Xcoal's request to amend its answer to assert affirmative defenses should be granted as unopposed.  Doc. 54 at 1.  The Court agrees.  Xcoal may amend its answer to add the affirmative defenses.  *See Weisman Celler Spett & Modlin, P.C. v. Trans-Lux Corp.*, No. 12 Civ. 5141 (JMF), 2013 WL 2190071, at *2 (S.D.N.Y. May 21, 2013) (granting defendant's motion to amend to add affirmative defenses as unopposed).

#### 1.  Undue Delay and Bad Faith

United does oppose Xcoal's attempt to add the six counterclaims.  First, United objects on the basis of timeliness.  Doc. 49 at 9–11.  In this Circuit, "the party seeking to amend its pleading must explain its delay," but "the party opposing the amendment carries the burden of showing undue prejudice or bad faith."  *Francisco v. Abengoa, S.A.*,

559 F. Supp. 3d 286, 312 (S.D.N.Y. 2021); *see also United States ex rel. Raffington v. Bon Secours Health System, Inc.*, 285 F. Supp. 3d 759, 772 (S.D.N.Y. 2018) (granting leave to amend where defendants failed to carry their burden of demonstrating that the new allegation would significantly delay the proceedings).

United suggests that Xcoal fails to offer a satisfactory explanation for its failure to bring its counterclaims sooner. Doc. 49 at 11. Xcoal explains that through discovery, it confirmed that a modified delivery schedule had never been agreed upon, suggesting that United was the party in breach because it refused to agree to Xcoal's proposed schedule and twice refused Xcoal's request for coal. Doc. 44 at 9; Doc. 46-1 at 22. Xcoal further asserts that discovery has begun to reveal the extent of United's interference with Xcoal's contract with ADI, but that further document production was necessary to understand the history of dealings between United, ADI, and Metinvest. Doc. 44 at 8.

Courts in this District have considered the procedural posture when deciding whether a party unduly delayed before moving to amend. *Spectrum Dynamics Med. Ltd. v. General Electric Co.*, No. 18 Civ. 11386 (VSB) (KHP), 2023 WL 242721, at *2 (S.D.N.Y. Jan. 18, 2023). In *Spectrum*, the Court concluded that there was no undue delay where a trial date had not been set and discovery had not ended. *Id.* at *3. Here too, a trial date has not been set and discovery is ongoing. Accordingly, the Court finds that the procedural posture counsels against a finding of undue delay.

United further argues that there is undue delay because Xcoal had knowledge of the facts relevant to its proposed counterclaims when it filed its initial answer on August 22, 2023. Doc. 49 at 9–10. For example, United argues that in its original answer, Xcoal asserted that United's sale of coal to ADI "interfered with both Xcoal's contracts with [ADI] as well as Xcoal's contracts with United," which is the same information it uses as the basis of its proposed tortious interference counterclaim. *Id.* at 10 (quoting Doc. 7 at 14). Xcoal maintains that while it had "suspicions" of United's interference with its

8

contract with ADI, it obtained additional information after the amended pleading deadline had passed that was relevant to its tortious interference claim.  Doc. 44 at 8.

However, the dispute over whether Xcoal knew of United's business dealings with ADI at the time it filed its initial answer is not dispositive.  "In opposing a motion for leave to amend a complaint, '[s]imply alleging that the plaintiff could have moved to amend earlier than she did . . . is insufficient to demonstrate undue delay.'"  *Francisco*, 559 F. Supp. 3d at 312 (alteration and omission in original) (citation omitted); *see also Bodum Holding AG v. Starbucks Corp.*, No. 19 Civ. 4280 (ER), 2020 WL 6135714, at *9 (S.D.N.Y. Oct. 16, 2020) (explaining that "a court will not deny a motion to amend simply because a plaintiff now 'alleg[es] facts that were previously within [its] knowledge'" (alterations in original) (citation omitted)).  Therefore, even if Xcoal had previously known the information it now asserts in its proposed counterclaims, that fact alone would be insufficient to demonstrate undue delay.

Moreover, absent any showing of bad faith or undue prejudice, mere delay "does not provide a basis for a district court to deny the right to amend."  *Perez v. Escobar Constr., Inc.*, 342 F.R.D. 378, 381 (S.D.N.Y. 2022) (quoting *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981)).  Here, United does not argue that Xcoal acted in bad faith or that the amendment would unduly prejudice United.  Accordingly, the Court concludes that Xcoal's proposed counterclaims are neither unduly delayed nor brought in bad faith.

### 2.  Futility

Second, United asserts that all six counterclaims are futile.  "An amendment to a pleading is futile if the proposed claim would not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)."  *In re Latam Airlines Grp. S.A.*, No. 22 Civ. 8068 (ER), 2023 WL 4741335, at *4 (S.D.N.Y. July 25, 2023).  To withstand a motion to dismiss, the plaintiff must allege sufficient facts that, when accepted as true, "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S 544, 570 (2007).  "The

party opposing the motion to amend bears the burden of proving the claim's futility." *In re Latam Airlines*, 2023 WL 4741335, at *4.

   a. *Declaratory Judgment Counterclaims*

   Xcoal seeks three declaratory judgments:  (1) to void the Wellmore Purchase Order for impossibility of performance or mutual mistake; (2) to void the Affinity Purchase Order for impossibility of performance or mutual mistake; and (3) to declare United in breach for failure to tender coal in October and November 2022 under the Purchase Orders.  Doc. 46-1 at 25–32.  United argues that the declaratory judgment counterclaims are unnecessary because Xcoal's affirmative defenses already require a determination of whether the Purchase Orders are enforceable and whether they have been breached.  Doc. 49 at 11.

   Courts in this Circuit have explained that "[a] counterclaim seeking a declaratory judgment may be dismissed if it is duplicative of the counterclaimants' affirmative defenses, does not broaden the scope of the dispute, or would not present a live controversy once the plaintiffs' claims have been resolved on the merits." *Nat'l Acad. of Television Arts & Sciences, Inc. v. Multimedia System Design, Inc.*, 551 F. Supp. 3d 408, 430 (S.D.N.Y. 2021).  Here the first two counterclaims seeking declaratory judgment to void the Purchase Orders for impossibility of performance and mutual mistake mirror Xcoal's affirmative defenses for impossibility or impracticability of performance and mutual mistake.  *Compare* Doc. 46-1 at 13–14, *with id.* at 25–29.  Xcoal's request to declare United in breach of the Purchase Orders for failure to perform mirrors Xcoal's affirmative defense for failure to timely tender coal for delivery under both Purchase Orders.  *Compare id.* at 14, *with id.* at 30–32.  The Court does not see any reason—and Xcoal provides none—to allow the duplicative arguments.  Accordingly, the Court will not permit Xcoal to amend its answer to add the declaratory judgment counterclaims.

b. *Breach of Contract Counterclaims*

United next asserts that Xcoal's fourth and fifth counterclaims for breach of contract under the Purchase Orders are futile because Xcoal was required to provide notice of default and an opportunity for United to cure.  Doc. 49 at 12–13.  Indeed, under New York law, "where no notice was given as set forth under the [contract], there can be no breach of the [contract] because [the breaching party] was not afforded the opportunity to cure the defect." *In re 4Kids Entertainment, Inc.*, 463 B.R. 610, 683 (Bankr. S.D.N.Y. 2011) (first and second alterations in original) (citation omitted).  "In fact, terminating a contract without complying with the notice and cure provisions therein is itself a material breach." *Id.*

Here, the Purchase Orders required that Xcoal provide written notice and thirty days to cure before terminating the contract for United's failure to perform.  Doc. 46-7 at 6; Doc. 46-8 at 6.  Xcoal does not dispute that it failed to comply with the notice requirements.  However, Xcoal contends that because United repudiated the contract by refusing to deliver coal, notice would have been futile.  Doc. 54 at 8–9.  In limited circumstances, such as where a nonperforming party expressly repudiates the parties' contract or abandons performance, "New York law permits a party to terminate a contract immediately, without affording the breaching party notice and opportunity to cure." *Needham v. Candie's, Inc.*, No. 01 Civ. 7184 (LTS) (FM), 2002 WL 1896892, at *4 (S.D.N.Y. Aug. 16, 2002); *see Wolff & Munier, Inc. v. Whiting-Turner Contracting Co.*, 946 F.2d 1003, 1009 (2d Cir. 1991).  "To constitute repudiation of a contract, a party's conduct must 'indicate an unequivocal intent to forgo performance of [its] obligations under the contract." *Needham*, 2002 WL 1896892, at *4 (alteration in original) (citation omitted).

In the proposed amended answer, Xcoal asserts that after it received notice of its alleged breach in August 2022, it entered into good faith discussions with United to amend the delivery schedule pursuant to the schedule modification provision.  Doc. 46-1

11

at 22, 24.  According to Xcoal, United refused to agree to the delivery schedule it

proposed and subsequently refused Xcoal's request for coal in October and November.

*Id.* at 24–25.  In an exchange of communications regarding Xcoal's requests, United

stated that "United has made its position clear . . . Xcoal has defaulted and breached the

purchase orders and has no rights with respect to those purchase orders," and that

"[w]hile United prepares its lawsuit to enforce its rights under those purchase orders,

United remains open to a proposal from Xcoal as to how to resolve this situation."  Doc.

46-13 at 2; *see also* Doc. 46-11 at 3 (stating that "Xcoal has no contractual rights to

purchase any coal from United").  At this stage, it is at least plausible that United's

communications show that it intended to forgo performance of its obligations under the

Purchase Orders.  *See Mayweather Promotions, LLC v. PAC Entertainment Worldwide

LLC*, No. 21 Civ. 4378 (VEC), 2022 WL 3997014, at *3–4 (S.D.N.Y. Sept. 1, 2022)

(holding that reasonable fact finder could conclude that party repudiated by texting "I'm

done" the day before payment was due).  Accordingly, the Court concludes that Xcoal

has plausibly alleged that United repudiated the Purchase Orders, and therefore Xcoal

was not required to comply with the notice provisions.  The Court will allow Xcoal to

amend its answer to add counterclaims IV and V.

     *c.  Tortious Interference Counterclaim*

     United argues that the sixth counterclaim for tortious interference is futile because

Xcoal failed to allege that United's objective was to procure ADI's breach.  Doc. 49 at

13.  "Under New York law, the elements of tortious interference with contract are (1) the

existence of a valid contract between the plaintiff and a third party; (2) the defendant's

knowledge of the contract; (3) the defendant's intentional procurement of the third

party's breach of the contract without justification; (4) actual breach of the contract; and

(5) damages resulting therefrom."  *Prospect Funding Holdings, LLC v. Vinson*, 256 F.

Supp. 3d 318, 327 (S.D.N.Y. 2017) (citation omitted).

Xcoal adequately pleads that it had contracts with ADI for the sale of coal it was to receive from United, and that United learned of ADI's coal needs and its contractual relationship with Xcoal. Doc. 46-1 at 17–18. Accordingly, Xcoal sufficiently alleges the first two elements of tortious interference. The issue is whether Xcoal has sufficiently alleged that United intentionally procured ADI's breach of its contract with Xcoal. "To satisfy this element, it is not enough that a defendant engaged in conduct with a third-party that happened to constitute a breach of the third party's contract with the plaintiff; instead a plaintiff must allege facts showing that 'the defendant's *objective* was to procure such a breach.'" *Prospect*, 256 F. Supp. 3d at 327–28 (citation omitted). "[T]he interference 'must be intentional, not merely negligent or incidental to some other, lawful purpose.'" *Better Holdco, Inc. v. Beeline Loans, Inc.*, 666 F. Supp. 3d 328, 399 (S.D.N.Y. 2023) (citation omitted). "[M]erely acting with knowledge that a third party may breach a contract with some other party is not sufficient to constitute procurement of the breach." *Prospect*, 256 F. Supp. 3d at 328 (finding that plaintiff failed to sufficiently allege intentional procurement of breach even where proposed defendant may have known that third party intended to breach).

In the proposed amended answer, Xcoal asserts that United obtained information regarding Xcoal's contractual relationships with ADI and subsequently contracted with ADI for the subject coal with the intent to cause ADI's breach so that United could profit twice from the same transaction. Doc. 46-1 at 34–36. The Court concludes that Xcoal's allegations are conclusory and offer no additional facts that suggest United did anything more than enter into a contract with ADI for the sale of coal. As United points out, "[n]othing in either of the two Purchase Orders prevents United [] from selling its coal to *anyone*, let alone to ADI." Doc. 49 at 5. Moreover, the Court "is not required to credit . . . 'threadbare recitals of the elements of a cause of action.'" *Stardust Monte-Carlo, S.A.R.L. v. Diamond Quasar Jewelry, Inc.*, No. 16 Civ. 9918 (ER), 2018 WL 1027754, at *2 (S.D.N.Y. Feb. 20, 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678

13

(2009)).  Given that Xcoal has failed to adequately plead intentional procurement, the

Court need not determine whether it has sufficiently pled the other elements of a tortious

interference claim.  Xcoal's request to amend its answer to add a counterclaim for

tortious interference is denied.

### B.  Sealing Request

With respect to the sealing of CEO Ernie Thrasher's deposition, Xcoal requests

that the deposition remain under seal.  Doc. 53.  Xcoal argues that the deposition is not a

"judicial document"—and thus there is no presumption of public access—because Xcoal

does not rely on the deposition to assert its proposed counterclaims.  *Id.* at 1–2.  Xcoal

further argues that even if the Court were to consider the deposition a judicial document,

it should remain sealed because it contains sensitive commercial information that is not

critical to the underlying motion.  *Id.* at 2.  United, for its part, contends that the

deposition is relevant to its undue delay argument because it demonstrates that Xcoal

"knew the facts underlying each and every one of its six proposed counterclaims before it

filed its answer in August 2023."  Doc. 55 at 2.

In deciding whether to seal a document, "a court must determine:  (1) whether the

document . . . qualifies as a judicial document; (2) the weight of the presumption of

public access attaching to that judicial document; and (3) if any countervailing factors or

higher values outweigh the right of public access to that judicial document."  *Carbon

Investment Partners, LLC v. Bressler*, No. 20 Civ. 03617 (ER), 2020 WL 5441497, at *2

(S.D.N.Y. Sept. 10, 2020).  "To be classified a judicial document, material 'must be

relevant to the performance of the judicial function and useful in the judicial process.'"

*Id.* (quoting *Brown v. Maxwell*, 929 F.3d 41, 49 (2d Cir. 2019)).

While a presumption of access attaches to any item that is a "judicial document,"

the presumption is weak where the information in the document is not critical to the

court's resolution of a motion.  *Graczyk v. Verizon Communications, Inc.*, No. 18 Civ.

6465 (PGG), 2020 WL 1435031, at *8–9 (S.D.N.Y. Mar. 24, 2020).  Here, assuming that

the deposition is a judicial document, the presumption is weak because the information in the deposition—which United argues is relevant to demonstrate undue delay—is not critical to the Court's decision.  As discussed above, prior knowledge of the information relevant to the proposed counterclaims is not enough to establish undue delay.  *See Francisco*, 559 F. Supp. 3d at 312.  Moreover, Xcoal has asserted that the deposition contains sensitive commercial information—such as pricing data and the names of customers—that has no bearing on the Court's resolution of Xcoal's motion.  Doc. 53 at 2.  "Indeed, courts in this Circuit routinely permit parties to redact sensitive financial information akin to the material at issue here."  *Graczyk*, 2020 WL 1435031, at *9.  Accordingly, the Court concludes that Xcoal's privacy interests outweigh any weak presumption of public access.  Xcoal's request to maintain the deposition under seal is granted.

## IV.    CONCLUSION

For the foregoing reasons, Xcoal's motion to amend its answer, Doc. 43, is GRANTED in part and DENIED in part.  Specifically, the motion is granted with respect to Xcoal's request to add affirmative defenses and counterclaims IV and V.  The motion is denied with respect to Xcoal's request to add counterclaims I, II, III, and VI.  Xcoal is directed to file its amended answer by October 28, 2024.  Xcoal's request that Thrasher's deposition remain under seal is GRANTED.

A case management conference will be held on January 24, 2025, at 11:00 a.m. at the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York 10007, Courtroom 619. The Clerk of Court is respectfully directed to terminate Docs. 43 and 48.

It is SO ORDERED.

Dated:    October 21, 2024
          New York, New York

_____
          EDGARDO RAMOS, U.S.D.J.

16